> *THIS AMENDED MOTION IS FILED TO INSERT THE DATE FOR THE PLEADING VERSUS THE ORIGINAL MOTION FOR RELIEF FILED AT DOCKET ENTRY 57. NO SUBSTANTIVE CHANGES WERE MADE TO THIS PLEADING.*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

IN RE:                                                Case No. 18-82948-CRJ-11

SARAI SERVICES GROUP, INC.,[1]           CHAPTER 11

                                                     (JOINTLY ADMINISTERED)

         Debtors.                           /

**AMENDED MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY TO TERMINATE GROUP INSURANCE POLICIES**

Pursuant to 11 U.S.C. §362(d)(1), UnitedHealthcare Insurance Company ("UHIC") and UnitedHealthcare of Alabama, Inc. ("UHA," and together with UHIC, "United") hereby move for relief from the automatic stay to terminate certain group health, vision, and dental insurance policies entered into by United and Sarai Services Group, Inc. (the "Debtor") due to the Debtor's failure to pay timely the post-petition premium due under the policies. In support of this motion, United relies on the Declaration of Paul J. Cirillo (the "Cirillo Declaration", which was attached as **Exhibit A** to the original Motion for Relief from the Automatic Stay [Doc. No. 57]), and states as follows:

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. § 1409(a).

---

[1] In addition to Sarai Services Group, Inc., the Debtors include the following: SSGWW JV LLC, Case No. 18-82949-CRJ-11; Sarai Investment Corporation, Case No. 18-82950-CRJ-11; and CM Holding, Inc., Case No. 18-82951-CRJ-11.

3. The statutory predicate for the relief sought herein are 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001, and Bankr. N.D. Ala. R. 4001-1.

## II. BACKGROUND

### A. The Policies

4. United and the Debtor are parties to the following group health insurance policies (collectively, the "Health Policies"): Choice Plus Group Policy under Group No. G/GA7Y3338NM issued by UHIC; and Choice Group Policy under Group No. G/GA4W0729BW issued by UHA. Under the Health Policies, United provides group health insurance coverage to the Debtor's employees and their eligible dependents, in exchange for monthly premium payments. A true and accurate copy of the Health Policies is attached as **Exhibit 1** to the Cirillo Declaration.

5. UHIC and the Debtor are also parties to Dental Insurance Group Policies under Group Nos. GA4W0729BW and GA7Y3338NM (the "Dental Policies"), pursuant to which United provides group dental insurance coverage to the Debtor's employees and their eligible dependents, in exchange for monthly premium payments. A true and accurate copy of the Dental Policies is attached as **Exhibit 2** to the Cirillo Declaration.

6. UHIC and the Debtor are parties to Vision Insurance Policies under Group Nos. GA4W0729BW and GA7Y3338NM (the "Vision Policies" and together with the Dental Policies and the Health Policies, the "Policies"), pursuant to which United provides group vision insurance coverage to the Debtor's employees and their eligible dependents. A true and accurate copy of the Vision Policies is attached as **Exhibit 3** to the Cirillo Declaration.

7. Pursuant to Sections 3.4 and 3.5 the Health Policies, monthly premium is due on the first of each month, but no later than a thirty-one (31) day grace period after that date. Pursuant to Sections 3.5 and 5.1.A of the Health Policy, if the monthly premium is not paid within the grace

period, the Health Policies automatically terminate on the last day of the grace period.

8. Pursuant to Article 3 of the Dental Policies, monthly premium is due on the first of each month, but no later than a thirty-one (31) day grace period after that date. Pursuant to Articles 3 and 5 of the Dental Policies, if the monthly premium is not paid within the grace period, the Dental Policies automatically terminate retroactive to the last paid date of coverage.

9. Pursuant to Article 3 of the Vision Policies, monthly premium is due on the first of each month, but no later than a thirty-one (31) day grace period after that date. Pursuant to Articles 3 and 5 of the Vision Policies, if the monthly premium is not paid within the grace period, the Vision Policies automatically terminate retroactive to the last paid date of coverage.

**B. The Bankruptcy Case and Debtor's Failure to Pay Premium under Policies**

10. On October 3, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.

11. The Debtor failed to pay the pro-rata, post-petition premium due under the Policies for the month of October 2018, and for the entire month of November 2018. Specifically, $33,179.08 is owed for post-petition premium for October and the grace period to pay such amount expired on October 31, 2018.[2] For November 2018, the Debtor was invoiced for $37,822.35 of premium. There is a net credit for December 2018 premium in the amount of ($9,245.40). Once this amount is applied to the November premium, it is reduced to $28,576.95. The grace period to pay such amount expired on December 1, 2018.

12. The unpaid invoice summaries for premium due under the Policies for the months of October through December 2018, are attached to the Cirillo Declaration as **Exhibit 4**.[3] The Debtor's

---

[2] This is calculated based on the net monthly premium of $36,733.98 pro-rated over 28 of the 31 post-petition days in October 2018.

[3] The full invoices contain the personal information of the Debtors' employees and have therefore been omitted. The Debtor has been sent a full copy of the invoice in the ordinary course of business.

payment history under the Policies is attached to the Cirillo Declaration as **Exhibit 5**.

### III. REQUESTED RELIEF

13. As set forth below, cause exists to grant United relief from the automatic stay to terminate the Policies in accordance with their terms. Specifically, cause exists to lift the stay because the Policies automatically terminate, by their own terms, due to the failure to pay monthly premium within the applicable grace periods.

14. Section 362(d)(1) of the Bankruptcy Code provides that a court shall, upon request of a party in interest and after notice and a hearing, grant relief from the stay "for cause". "Cause is not defined in the Bankruptcy Code, and must be determined on a case by case basis." *In re S. Oakes Furniture, Inc.*, 167 B.R. 307, 308 (Bankr. M.D. Ga. 1994). Bankruptcy courts look to the totality of the circumstances test to determine whether cause for relief from the stay exists. *In re Robertson*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000). The decision to lift the stay is within the discretion of the Bankruptcy Court Judge. *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989), *cert. denied*, 493 U.S. 853.

15. "It is well settled that the Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms." *In re Carroll*, 903 F.2d 1266, 1271 (9th Cir. 1990) (citation omitted); *see In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989) ("'whatever rights a debtor has in property when his bankruptcy petition is filed continue in bankruptcy-no more, no less'"), *cert. denied*, 497 U.S. 1007 (1990). As such, courts have held that the stay under § 362(a) should not preclude the automatic termination of an insurance policy in accordance with its terms due to the failure to pay premium within the grace period. *See In re Milgram Kagan Corp.*, No. 92 B 26324, 1994 WL 22470, at *3 (Bankr. N.D. Ill. Jan. 24, 1994)

16. Moreover, in determining whether cause exists to grant relief from the stay, courts

have considered the legislative history of § 362, which provides, in pertinent part, that "[g]enerally, proceedings . . . involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Marvin Johnson's Auto Serv., Inc.*, 192 B.R. 1008, 1013 n.4 (Bankr. N.D. Ala. 1996) (*quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess., p. 340-44 (1977)).

17. Even in the absence of express contractual language automatically terminating the contract upon a payment default, courts have found that the failure to make post-petition payments is cause for relief from the automatic stay under Section 362(d)(1). *See, e.g., In re Watkins*, 362 B.R. 568, 573 (E.D.N.Y. 2007) ("failure of a tenant to make post-petition mortgage payments and to comply with rental obligations constitutes cause to lift the automatic stay under § 362(d)(1)"); *In re Rocchio*, 125 B.R. 345, 347 (Bankr. D.R.I. 1991) (holding that failure to make post-petition rent payments, along with lack of evidence that debtor can cure or provide adequate protection or adequate assurance of future performance constitutes cause under § 362(d)(1)); *In re Skipworth*, 69 B.R. 526, 527 (Bankr. E.D. Pa. 1987) (finding that failure to make nine consecutive post-petition mortgage payments was cause under § 362(d)(1)).

18. Here, cause exists to grant United relief from the stay to terminate the Policies because the Policies, by their own terms, provide that they will automatically terminate upon nonpayment of premium within the grace period. Specifically, Sections 3.5 and 5.1.A of the Health Policies provide that if the monthly premium is not paid within the grace period, the Health Policies automatically terminate on the last day of the grace period. Similarly, pursuant to Articles 3 and 5 of the Vision and Dental Policies, if the monthly premium is not paid within the grace period, these policies automatically terminate retroactive to the last paid date of coverage.

19. The Debtor has failed to pay in full for the post-petition portion of October 2018 and

all of November 2018, within the applicable grace periods.

20. Granting relief from the stay will not prejudice the Debtor, but will merely enforce the contractual terms that it agreed to when entering into the Policies. By contrast, United will be significantly prejudiced if relief from stay is not granted because it will be obligated to continue to provide insurance coverage without receiving its bargained for premium under the Policies.

21. To prevent any further prejudice to United in continuing to provide insurance coverage without the bargained for premium, United further requests that this Court waive the 14-day stay provided in Fed. R. Bankr. P. 4001(a)(3).

## IV. CONCLUSION

WHEREFORE, United respectfully requests that this Court enter an order granting (i) United relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to terminate the Policies in accordance with their terms; (ii) a waiver of the stay of such order under Fed. R. Bankr. P. 4001(a)(3); and (iii) such other and further relief as is just and necessary.

Dated: December 11, 2018

UNITEDHEALTHCARE OF ALABAMA, INC.
AND UNITEDHEALTHCARE INSURANCE
COMPANY

*/s/ Brian R. Walding*
Brian R. Walding
WALDING, LLC
2227 First Avenue South, Suite 100
Birmingham, Alabama 35233
bwalding@waldinglaw.com | (205) 307.5050
- and -
Eric S. Goldstein
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
egoldstein@goodwin.com
(860) 251-5000
*Attorneys for UnitedHealthcare of Alabama, Inc. and UnitedHealthcare Insurance Company*