# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 18-82948-CRJ-11 |
| SARAI SERVICES GROUP, INC.,[1] | CHAPTER 11 |
| | (JOINTLY ADMINISTERED) |
| Debtors.    / | |

## REPLY TO DEBTOR'S RESPONSE
## TO AMENDED MOTION FOR STAY RELIEF

UnitedHealthcare Insurance Company ("UHIC") and UnitedHealthcare of Alabama, Inc. ("UHA," and together with UHIC, "United") hereby files this reply to Sarai Services Group, Inc.'s (the "Debtor") Response to Amended Motion for Stay Relief (ECF No. 85) (the "Response"). In support of its Reply, United relies on the Supplemental Declaration of Paul J. Cirillo (the "Supp. Cirillo Decl"), attached hereto as **EXHIBIT A** and further states as follows.

1.      In its Response, the Debtor admits that it has failed to pay the entire post-petition insurance premiums to United. (Response ¶ 2.) However, the Debtor argues that United is not entitled to stay relief because of an alleged right of recoupment arising from certain, unspecified pre-petition credits that would be in excess of the unpaid post-petition premium. (*Id*. ¶¶ 3-9.) In particular, the Debtor asserts, without any supporting evidence, that United improperly invoiced the Debtor for premium associated with employees of its joint venture, WW Contractors, Inc. ("WWC"), for the time period of "mid-2017 to February 2018." (*Id*. ¶ 3.) The Debtor's sole support for this alleged improper invoicing is

---

[1] In addition to Sarai Services Group, Inc., the Debtors include the following: SSGWW JV LLC, Case No. 18-82949-CRJ-11; Sarai Investment Corporation, Case No. 18-82950-CRJ-11; and CM Holding, Inc., Case No. 18-82951-CRJ-11.

that the monthly premium ranged from approximately $61,000 to $145,000 between May 2017 and February 2018, and then "after the Debtor notified United of the incorrect premium amounts" dropped to a range of approximately $33,000 to $49,000 per month between March and May 2018. (*Id*. ¶¶ 4-5.) [2]

2. For the reasons set forth below, the Debtor's alleged right of recoupment is unsupported by both the facts and the law, and United's Motion for Relief from the Automatic Stay To Terminate Group Insurance Policies (ECF No. 57) (the "<u>Motion</u>") should be granted.

3. "Recoupment is an equitable remedy which permits the offset of mutual debts when the respective obligations are based on the same contract of transaction. . . . To assert a right of recoupment it is essential that the parties respective obligations arise from the same transaction." *In re Black*, 280 B.R. 680, 683-84 (Bankr. N.D. Ala. 2001). Courts focus on the facts and equities of each case to determine whether parties' respective obligations arise from the same transaction. *Id*., 684.

4. Even assuming, *arguendo*, that credits from transactions occurring in mid-2017 through February 2018, arise from the same transaction as the outstanding post-petition premium for October through December 2018, there are no mutual debts because United does not owe the Debtor any amounts under the Policies.[3]

---

[2] In the Response, the Debtor claims that United was auditing the premiums paid to determine the amount it allegedly overpaid, and, since it had not received such audit, the Debtor now needs to conduct discovery related to the audit's results. (Response ¶¶ 7-8, 10.) On January 7, 2019, United sent the Debtor a spreadsheet listing each member that has ever been insured under the Policies, and the premium charged and/or credits issued for each such member for every month since the Policies were issued. (Supp. Cirillo Decl. ¶ 10.) Thus, there is no need for any such discovery. Moreover, as noted in Part B below, the time to have advised United of the need for any terminations in enrollment has long since passed.
[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

### A. United Properly Issued Credits for All Changes in Enrollment for Which It Received Timely Notice.

5. The reduction in premiums between 2017 and 2018 cited by the Debtor in its Response is the result of layoffs that occurred between January and February 2018. United properly issued and applied all credits resulting from the removal of such members from the Policies.

6. As explained in a March 9, 2018 email from the Debtor's insurance broker, Janet Dunn, to United, the Debtor had "two rounds of employee terminations, the first had an effective date of 1/1/2018 . . . The second round of terminations were done more recently and were processed with a 3/1/2018 effective date." (Supp. Cirillo Decl. ¶ 4-5 & Ex. 6.) Ms. Dunn went on to explain in her email that the Debtor erred with regard to the timing of the second terminations and requested that United make a further adjustment to reflect the correct termination date of February 4, 2018. (*Id.*) Notably, Ms. Dunn makes no mention of the incorrect enrollment of WWC's employees or any other credits. (*See id.*)

7. United processed the terminations effective January 1, 2018, and the credits arising from such terminations are reflected on Invoice No. 027293635808 issued on February 13, 2018. (Supp. Cirillo Decl. ¶ 5.) A true and correct copy of Invoice No. 027293635808[4] is attached to the Supp. Cirillo Decl. as Exhibit 7.

8. United next processed the terminations effective March 1, 2018, and the credits arising from such terminations are reflected on Invoice No. 027294075715 issued

---

[4] The names and identification numbers of the employees have been redacted from all invoices to protect their personal information. The Debtor has an unredacted copy of the referenced invoices and United will provide an unredacted copy to the Court, if necessary, for its *in camera* review.

3

on March 13, 2018.  (Supp. Cirillo Decl. ¶ 6.)  A true and correct copy of Invoice No. 027294075715 is attached to the Supp. Cirillo Decl. as <u>Exhibit 8</u>.

9.  Finally, as instructed in Ms. Dunn's March 9, 2018 email, United then adjusted the effective date of the March 1, 2018 terminations to reflect the corrected termination date of February 4, 2018.  (Supp. Cirillo Decl. ¶ 7.)  The credits for the pro-rata portion of February for these employees are reflected on Invoice No. 027290375399 issued on March 14, 2018.  (Supp. Cirillo Decl. ¶ 7.)  A true and correct copy of Invoice No. 027290375399 is attached to the Supp. Cirillo Decl. as <u>Exhibit 9</u>.

10.  Subsequent to United issuing the foregoing credits, the Debtor paid its then-outstanding premium, and, indeed, got current on its outstanding premium by mid-June 2018.  (*See* ECF No. 57-1, Ex. 5.)  United has no record of the Debtor requesting any other changes or terminations during this time period.  (Supp. Cirillo Decl. ¶ 8.)

11.  Moreover, the Debtor's own schedules undermine its claim of the existence of a pre-petition credit owed to it.  Specifically, the Debtor fails to list any credits or refund in Schedule A/B and lists an undisputed debt owed to United in the amount of $103,612.47, which is <u>not</u> subject to offset.[5]  (ECF No. 35, at pp. 3-8, 13.)

**B. The Debtor Is Time Barred From Seeking Credits For Pre-Petition Coverage.**

12.  The Debtor, as the Enrolling Group, is contractually obligated to pay all of the premium due under the Policies.  (*See* Health Policies § 3.4 & Ex. 1; Dental Policies Art. 3 & Ex. 1; Vision Policies Art. 3 & Ex. 1.)[6]  It is the Debtor's responsibility, as the

---

[5] United has filed a proof of claim for $107,167.37 in unpaid prepetition premium. (Claim Register, Claim No. 18.)

[6] The Health Policies, Dental Policies, and Vision Policies are respectively Exhibits 1-3 of the Motion, and are available at ECF No. 57-1.

Enrolling Group, on its own or through its broker to provide United with the identity of the members to be enrolled under for coverage under the Policies. (Supp. Cirillo Decl. ¶ 9.) If the Debtor wants to terminate or change a member's coverage, it must provide United written notice within 60 days of the effective date of such termination or change for the Health Policies, and within 30 days of the effective date of such termination or change for the Dental and Vision Policies. (*See* Health Policies § 3.3; Dental Policies Art. 3; Vision Policies Art. 3.) Moreover, the Policies provide that United will not grant retroactive credit for any change occurring more than 60 days prior to the date it receives notification of the change from the Debtor. (*Id.*)

13. As noted above, during the pre-petition period, United has issued all credits arising from its receipt of timely notice of changes or terminations of coverage. Under the terms of the Policies, it is now simply too late for the Debtor to seek credits for retroactive changes back to the pre-petition period.

14. Moreover, while Ms. Dunn's email belies the Debtor's assertion about the incorrect enrollment of employees of WCC, any such mistaken enrollment would be the Debtor's mistake because only it, as the Enrolling Group, could enroll members for coverage under its own Policies.

### C. Conclusion

For the foregoing reason as well as those set forth in the Motion, United respectfully requests that this Court enter an order granting (i) United relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to terminate the Policies in accordance with their terms; (ii) a waiver of the stay of such order under Fed. R. Bankr. P. 4001(a)(3); and (iii) such other and further relief as is just and necessary.

Dated: January 15, 2019

UNITEDHEALTHCARE OF ALABAMA, INC. AND UNITEDHEALTHCARE INSURANCE COMPANY

*/s/ Brian R. Walding*
Brian R. Walding
WALDING, LLC
2227 First Avenue South, Suite 100
Birmingham, Alabama 35233
bwalding@waldinglaw.com | (205) 307.5050

- and -

Eric S. Goldstein
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
egoldstein@goodwin.com
(860) 251-5000

*Attorneys for UnitedHealthcare of Alabama, Inc. and UnitedHealthcare Insurance Company*