IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **SARAI SERVICES GROUP, INC.,**[1] | ) | |
| | ) | **Case No. 18-82948-CRJ-11** |
| Debtor. | ) | **(Jointly Administered)** |

## CENTERSTATE BANK'S OBJECTION TO DEBTORS' DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

**COMES NOW** CenterState Bank, N.A., f/k/a National Bank of Commerce ("CenterState"), by and through its undersigned counsel, and hereby objects (this "Objection") to CM Holding, Inc.'s ("CM Holding") *Disclosure Statement* (the "CM Holding Disclosure Statement") [Doc. No. 283] and to Debtors Sarai Services Group, Inc. ("SSG"), SSGWW JV LLC ("SSGWW"), and Sarai Investment Corporation's ("SIC," and together with SSG and SSGWW, "Sarai") *Disclosure Statement* (the "Sarai Disclosure Statement") [Doc. No. 281]. In support of its Objection, CenterState shows the Court as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3. On October 3, 2018 (the "Petition Date"), the Debtors commenced with this Court four voluntary cases under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

4. The Debtors continue to be authorized to operate their businesses as Debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been

---

[1] In addition to Sarai Services Group, Inc., the Debtors include the following: SSGWW JV LLC, Case No. 18-82949-CRJ-11; Sarai Investment Corporation, Case No. 18-82950-CRJ-11; and CM Holding, Inc., Case No. 18-82951-CRJ-11.

5. On August 8, 2019, the Debtors filed its Plan and Disclosure Statement. [Doc. No. 283 and 284].

## BACKGROUND FACTS

6. During the pendency of Debtors' bankruptcy cases, the Debtors have commingled funds, missed deadlines for monthly operating reports, and made loans between and among the Debtor entities that were unauthorized by this Court.

7. These deficiencies have made it very difficult for parties in interest like CenterState to properly evaluate the progress of these bankruptcy proceedings. Similar inadequacies in the Debtors' Disclosure Statements continue to present obstacles for creditors in evaluating whether to vote for Debtors' proposed Plans.

8. For example, in the Debtors' *February 2019 Monthly Operating Reports* [Doc. Nos. 174-177], the Debtors briefly reference an inter-company loan that does not appear to have been approved by this Court, and that does not appear to have been fully documented in the Monthly Reports. On SSG's February 2019 Monthly Report, the Debtors report that SSG obtained $52,400.00 in "Loan Proceeds from BRM/SSGWWJV." *See* Doc. No. 174, p. 2. However, in SSGWW's February 2019 Monthly Report, the Debtors state that SSGWW made a $34,212.00 disbursement to SSG, which is referenced as "Loan to SSG / Bank Fees." *See* Doc. No. 174, p. 5. It is unclear what this loan was for or whether it was properly documented in the Monthly Reports, as no Bankruptcy Court approval was requested to make the loan.

9. As another example, the Debtors' *January 2019 Monthly Operating Reports* [Doc. Nos. 142-145] reflect a similarly objectionable inter-company loan between the Debtors.

CM Holding's January 2019 Monthly Report states that in January 2019 CM Holding made $18,055.00 in "Loans to SSG." *See* Doc. No. 145, p. 2. Again, if an inter-company loan was made, it does not appear that it was approved by this Bankruptcy Court.

10. Related issues appear in the Debtors' Monthly Operating Reports in October and November 2018, respectively. In its November 2018 Monthly Report, SSG reported that it transferred $2,300 to CM Holding for rent, but there is not a corresponding deposit on the CM Holding Monthly Report or attached Bank Statements. Additionally, SSG's bank account statements from October 2018 reveal that CM Holdings transferred $2,200 to SSG on October 3, 2018. It is unclear why CM Holdings would be transferring money to SSG in these cases.

11. Additionally, the Debtors did not file their March 2019, April 2019, May 2019, and June 2019 Monthly Operating Reports until after they were due, in many cases over a month after they were due to be filed.

12. While these bankruptcy cases have been pending, it is unclear whether CM Holding has been permitting the Sarai entities to occupy its real property located at 3405 Triana Boulevard SW, Huntsville, AL 35805 (the "Real Property") without having to pay rent.[2] While transfers from certain of the Sarai entities to CM Holding for rent appear on certain Monthly Operating Reports, for many Monthly Operating Reports from 2019, it does not appear that CM Holding has been charging any of the Sarai entities rent for occupying the Real Property.[3]

---

[2] This Real Property is CenterState's primary piece of collateral on its loan to CM Holding.

[3] In effect, CM Holding has been subsidizing Sarai's creditors, by allowing Sarai to continue operations at the Real Property rent free, at the expense of CM Holding's creditors who risk going unpaid while CM Holding allows its affiliates to use its primary asset without receiving lease payments.

13. As a result, it has been extremely difficult for CenterState to make an evaluation about what the Real Property (its collateral) might be worth, given that it is very likely that CM Holding has simply been allowing Sarai to occupy this space for little or no rent payments, and without any written leases.

14. The CM Disclosure Statement and the Sarai Disclosure Statement fail to disclose the terms by which CM Holdings leases out the Real Property. There is no documentation in either Disclosure Statement about whether CM Holding leases out the Real Property to any of the Sarai Debtor entities pursuant to any type of inter-company lease agreement, and if so, what amount is owed in rent each month.

## **OBJECTION**

15. Section 1125 of the Bankruptcy Code requires a debtor, prior to soliciting votes for the confirmation of a plan, to file a disclosure statement containing adequate information to allow creditors and holders of equity interests to arrive at an informed judgment whether to accept or reject the debtor's plan. 11 U.S.C. § 1125. "Adequate information" is defined in § 1125(a)(1) of the Bankruptcy Code as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical, reasonable investor . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

16. As stated by one court:

> The purpose behind disclosure statements is to inform the uninformed parties in interest (the typical "hypothetical investor") in a formal and uniform way concerning the condition of the debtor ... [and] to furnish to the electorate to the confirmation process sufficient financial and operating information to enable each participant to make an "informed judgment" whether to approve or reject the proposed plan.

*In re Snyder*, 56 B.R. 1007, 1011 (Bankr. N.D. Ind. 1986).

17. Adequate information includes a description of the business, relevant financial information, a description of the plan, a liquidation analysis, projection of future operations, tax consequences, and other relevant materials. *Hall v. Vance,* 887 F.2d 1041 (10th Cir. 1989).

> A. **The CM Disclosure Statement Lacks Adequate Information Regarding the Value of the Real Property or the Terms of Any Intercompany Leases Between the Debtors.**

18. The CM Disclosure Statement does not provide adequate information as required by § 1125 of the Bankruptcy Code. CenterState objects to the CM Disclosure Statement because it does not provide any information regarding the potential value of the Real Property (as defined in the Disclosure Statement), the amounts that the Real Property has earned for CM Holding over the past year, or the amount for which Debtor expects that the Real Property might sell. *See In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) (a disclosure statement should include, among other items, "a complete description of the available assets and its value," including "valuation methods used to produce the [valuation] information in the disclosure statement"); *In re Metrocraft Pub. Services*, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988) (noting that without a "recent valuation of the property by a qualified individual . . . the Court is reluctant to approve a Disclosure Statement premised on an unsupported and self-serving valuation").

19. This deficiency is highlighted by the failure of the CM Disclosure Statement to provide any information about the terms by which the Real Property is leased between CM Holding and the other Debtors. It is unclear, based on the Debtors' Monthly Operating Reports and the Disclosure Statements, whether CM Holding leases the Real Property to Sarai under some type of inter-company agreement, or whether CM Holding simply allows Sarai to occupy the Real Property rent free.

20. As the CM Disclosure Statement makes clear, the sole means by which the Debtor intends to carry out the proposed Plan is through the "proceeds of the sale of the Real Property." *See* Disclosure Statement, § IV.C. However, due to the likelihood that CM Holding has been allowing Sarai to occupy the Real Property without having to pay full, market-rate rent on a routine basis, it is very difficult to tell what the Real Property might be worth. Without any information about what the Real Property is worth, might plausibly sell for, or the price the Debtor might accept to sell the Real Property at a potential auction, CenterState lacks the necessary detail to determine whether to vote for or against the proposed Plan.

21. As a result of these deficiencies, the CM Disclosure Statement fails to provide adequate information and should be disallowed.

### B. The Sarai Disclosure Statement Lacks Adequate Information Regarding the Value of Assets and Details of Intercompany Loans.

22. CenterState also objects to the Sarai Disclosure Statement because it does not provide adequate information regarding certain valuations the Debtors place upon their assets, namely the valuation of accounts receivable and/or personal property, nor does it disclose with specificity the methodology or standards used to appraise such property (*i.e.*, collection forecasts, deductions for uncollectable accounts, etc.). *See id.*

23. Additionally, the Sarai Disclosure Statement does not provide any insight into whether certain of the Sarai Debtors have taken loans from other affiliated Sarai Debtors (or from CM Holding), and whether those types of loans would be expected to continue after confirmation. Without any detail about the terms of these inter-company loans among the Sarai Debtors, Sarai's creditors are not adequately informed to vote on a Plan.

24. The Sarai Disclosure Statement lacks any explanation regarding how the proposed Plan arrived at its treatment of CenterState. The terms of SSG's proposed Plan contemplate

6
42001487 v3
Case 18-82948-CRJ11    Doc 300    Filed 09/11/19    Entered 09/11/19 11:33:29    Desc
Main Document    Page 6 of 9

"equal monthly payments [to CenterState] over the course of a 120-month term with interest accruing at the claim's contractual rate of 4.50%, with a standard amortization schedule for the term." *See* Sarai Disclosure Statement, § IV.C. However, CenterState's loan to SSG matures in November 2022. SSG is proposing to extend the term of its loan with CenterState at least seven years past the contractual maturity date, yet provides no analysis regarding the interest rate that would provide CenterState the present value of an extended 10-year payment stream or the interest rate that would comply with the factors outlined by the Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d 787 (2004).

25. Finally, the Sarai Disclosure Statement fails to provide any information about the rental revenues received by SSG on its real property located at 3300 Westmill Drive, Huntsville AL 35805, which is the property that secures CenterState's loan to SSG.

26. The Sarai Disclosure Statement does not include the kind of detail that adequately informs creditors regarding how to vote for the proposed Plan, and so the Sarai Disclosure Statement should also be rejected by the Court.

## RESERVATION OF RIGHTS

CenterState hereby reserves all rights and claims with respect to all issues pertaining to the confirmation of the proposed Plan and the Disclosure Statement, including but not limited to further objections to the same, if additional grounds for objecting to the Plan and Disclosure Statement exist.

## CONCLUSION

As set forth above, the Disclosure Statements described herein do not comply with the Bankruptcy Code and therefore cannot be approved pursuant to § 1125. Consequently, the Debtors' Disclosure Statements are due to be rejected.

**WHEREFORE**, premises considered, CenterState respectfully requests that this Court enter an Order:

(i) disapproving the adequacy of the Disclosure Statement; and

(ii) denying confirmation of the Plan; and

(ii) granting such other, further and different relief to which CenterState may be entitled.

Respectfully submitted this 11th day of September 2019.

/s/ James H. Haithcock, III
Joe A. Joseph
James H. Haithcock, III

Attorneys for the CENTER STATE BANK, F/K/A NATIONAL BANK OF COMMERCE

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street, Ste. 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
jjoseph@burr.com
jhaithcock@burr.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been served by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, on this the 11th day of September 2019

| | |
|---|---|
| Tazewell Taylor Shepard, IV | Richard M Blythe |
| Sparkman, Shepard & Morris, P.C. | United States Bankruptcy Administrator |
| P.O. Box 19045 | PO Box 3045 |
| Huntsville, AL 35804 | Decatur, AL 35602 |
| E-mail:ty@ssmattorneys.com | E-mail:Richard_Blythe@alnba.uscourts.gov |

/s/ James H. Haithcock, III
OF COUNSEL